IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDY JOSEPH SEITZINGER,

      Petitioner,

      v.

MARK NOOTH, Superintendent,
Snake River Correctional Institution,

      Respondent.

_____

Case No. 2:14-cv-01705-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, Magistrate Judge.**

      Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the district judge should DENY Petitioner's Amended Habeas Corpus Petition (ECF No. 19). Additionally, the district judge should DENY a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

**I.    Factual Background**

      On March 9, 2006, a man entered the Rogue Federal Credit Union (located in Ashland, Oregon), and forced a teller to give him approximately $6,000.00. *See* Resp't Exs. (ECF No. 18),

Exs. 102 at 1; 103 at 27-28, 32, 39. On or about August 24, 2006, a grand jury indicted Petitioner for the robbery, charging him with Robbery in the Second Degree. Resp't Ex. 102.

At trial, the State offered the testimony of credit union employees Connie Johnson and Sylvia Driskell; eyewitness Deanna Sapp; Petitioner's ex-wife Dawn Childress; DNA technician Christina Stivers; fingerprint analyst Darla Shaver; and several police officers. Resp't Ex. 103 at 4-6. Petitioner's attorney did not call any witnesses. *Id*. at 6.

Sapp testified that on the day of the robbery she parked her car outside the credit union near the ATM booth. *Id.* at 62, 66. She saw a man in the booth "kind of staring" at her as he paced back and forth with an envelope in his hand. *Id*. at 63. During the two minutes she was observing him, he pulled down a ski mask he was wearing and left it around his neck while "glancing at the car [] in a suspicious manner." *Id.* at 67. Shortly after the robbery, Sapp assisted police in creating a composite sketch. *Id.* When shown a photo lineup approximately two months later, Sapp identified an individual other than Petitioner. *Id.* at 65, 80-81; *see also* Resp't Ex. 117 (photo lineup).

Johnson and Driskell were working at the credit union on the day of the robbery. Resp't Ex. 103 at 34, 54. Johnson testified that at approximately 2:07 p.m., a man wearing a hat and ski mask covering most of his face entered the credit union. *Id.* at 35, 40. When he did not remove his mask, both employees became concerned. *Id.* at 36, 55.

Johnson testified that the man approached her counter holding an ATM envelope. *Id.* at 36, 57. She told him to pull down his mask, which he did, but then he pulled it back up. *Id.* at 36. When she repeated her request, he said "this is a robbery." *Id.* The man directed her to give him particular denominations of money, and then demanded the money in her "bottom drawer." When she questioned his reference to the bottom drawer, he "stuck his hand in his pocket and

said 'don't make me have to shoot you.'" *Id.* at 36, 39, 58. Johnson complied, but also gave him marked "bait money," which set off a silent alarm. *Id.* at 36-38.

Johnson testified that the robber had deep eyes, definite cheekbones, a long definite nose, and a moustache. *Id.* at 39. She testified that he was wearing a blue ski jacket and smelled strongly of cigarettes. *Id.* at 38, 40. She also confirmed that she had selected Petitioner's photo when shown the lineup, though she had some reservations because the eyes did not look quite right. *Id.* at 42-43, 50; *see also* Resp't Ex. 117. Johnson testified that the credit union records did not show Petitioner having transacted any business at the credit union. Resp't Ex. 103 at 42.

When police processed the scene, they found partial fingerprints, *id.* at 89, and noticed a wet, fresh, "runny nose kind of drop smear on the counter." *Id.* at 84-85. An officer took a sample of the substance for DNA analysis. *Id.* Johnson testified that she had not seen the substance on the counter prior to the robbery. *Id.* at 40, 51. There was no testimony indicating that the robber had sneezed or otherwise transferred the material to the counter.

The fingerprints obtained from the credit union were of no value for identification, but the DNA sample matched Petitioner. *Id.* at 89, 96-97. DNA technician Stivers testified that there was no indication of cross-contamination in the sample and that "less than one in 10 billion" people would have the same profile as that of the mucosal material on the counter and the swab taken from Petitioner's mouth. *Id.* at 96-99.

Ashland Police Detective Brent Jensen testified that when he and FBI Special Agent Jeffrey M. Gray questioned Petitioner about the robbery, Petitioner denied ever being in a bank in Ashland. *Id.* at 78. However, Childress testified that she had obtained a hotel room for Petitioner in Ashland the day before the robbery. *Id.* at 69, 82. Childress also testified that Petitioner smoked and owned a coat similar to the one worn by the robber. *Id.* at 69, 71.

With a unanimous verdict, the jury found Petitioner guilty of Robbery in the Second Degree. *Id.* at 125-26; Resp't Ex. 122. The court sentenced Petitioner to a seventy-month term of imprisonment and three years of post-prison supervision. Resp't Ex. 101 at 2-3.

## II.    Post-Trial Procedural History

On March 13, 2007, Petitioner filed a direct appeal alleging that his conviction was based on constitutionally insufficient evidence. Resp't Exs. 104 at 4, 123 at 2. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Seitzinger*, 224 Or. App. 687 (2008), *rev. denied*, 346 Or. 11 (2009).

On November 5, 2009, Petitioner filed for post-conviction relief on the basis that he received ineffective assistance of trial and appellate counsel. Resp't Exs. 109, 110. The post-conviction trial court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 127 at 26-28, 128; *Seitzinger v. Premo*, 258 Or. App. 907 (2013), *rev. denied*, 354 Or. 735 (2014).

Petitioner moves this Court to grant habeas relief on the grounds that (1) he received ineffective assistance of trial counsel (in five particulars); (2) he received ineffective assistance of appellate counsel (in two particulars); and (3) there was insufficient evidence to support his conviction. Pet'r's Am. Pet. (ECF No. 19) at 3-4.

Respondent moves the Court to deny habeas relief, because (1) Petitioner has failed to sustain his burden of proof on portions of Grounds One and Two; (2) the remainder of Ground One is procedurally defaulted; and (3) the argued portions of Grounds One and Three are not meritorious. Resp't's Resp. to Am. Pet. (ECF No. 30) at 2, 14; Resp't Sur-Reply (ECF No. 38) at 2.

## STANDARDS

Pursuant to 28 U.S.C. § 2254(d), a petition for a writ of habeas corpus filed by a state prisoner shall not be granted, with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) and (2); *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's application of clearly established federal law is unreasonable if its decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 134 S. Ct. at 1702; *Richter*, 562 U.S. at 103. A state court's factual determination is not unreasonable merely because the federal habeas court would reach a different conclusion in the first instance. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). "Instead, § 2254(d)(2) requires that [this Court] accord the state trial court substantial deference." *Brumfield*, 135 S. Ct. at 2277. If reasonable minds reviewing the record might disagree about the finding in question, habeas relief is not warranted. *Id.*

The last reasoned decision by the state court forms the basis of review by the federal habeas court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

The habeas court must "determine what arguments or theories . . . could have supporte[d] the state court's decision," and then ask whether those theories are indisputably incompatible with Supreme Court precedent. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (citing *Richter*, 562 U.S. at 101). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which [a court] can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

## DISCUSSION

### I.    Unargued Claims

Respondent moves the Court to deny habeas relief as to all of Petitioner's ineffective assistance of counsel (IAC) claims, with the exception of the two discussed below, on the ground that Petitioner did not address the claims in his supporting briefs and, therefore, has failed to sustain his burden to prove that habeas relief is warranted. Resp't Resp. at 2.

This Court has reviewed the state court record and concludes that Petitioner has failed to sustain his burden to prove that habeas relief is warranted on the unargued claims. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (habeas petitioner bears the burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (same). Accordingly, habeas relief should be denied as to those claims.

### II.    Insufficiency of the Evidence

Petitioner contends that the State presented insufficient evidence from which a jury could reasonably conclude that he was the robber, because (1) none of the eyewitnesses identified him as the robber from the video footage, police lineup, or in open court; (2) his fingerprints were not found in the bank; (3) the bait money, coat, and hat were not found in his possession; (4) there was insufficient evidence linking the DNA found at the bank to the robber; and (5) there was

insufficient circumstantial evidence from which the jury could infer guilt. Pet'r's Br. in Supp. at 21-22; Pet'r's Reply at 1-2.

Respondent argues that the evidence is sufficient because the State presented testimony to show that (1) Petitioner was in Ashland at the time of the robbery; (2) Petitioner owned a coat similar to the robber's coat; (3) Petitioner smoked and the robber smelled of smoke; (4) Petitioner's facial features were similar to the robber's facial features; (5) Petitioner's DNA matched the wet substance found on the credit union's counter; and (5) Petitioner had no business at the credit union which might otherwise explain the presence of his DNA. Resp't Ex. 105 at 3.

In *Jackson v. Virginia*, the Supreme Court held that the Due Process Clause "protects an accused against conviction except upon evidence that is sufficient [to fairly] support a conclusion that every element of the crime has been established beyond a reasonable doubt." 443 U.S. 307, 313-14 (1979). Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were met beyond a reasonable doubt. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012); *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (same).

There is no reasoned state decision regarding Petitioner's insufficiency of the evidence claim, and therefore this Court independently reviews the record to determine if the state court's rejection of the claim is contrary to, or an unreasonable application of, clearly established federal law. *Stanley*, 633 F.3d at 860; *Himes*, 336 F.3d at 853.

### A.    Eyewitness Identification

The eyewitness testimony concerning the identity of the robber was equivocal. The first eyewitness, Deanna Sapp, identified a person other than Petitioner as the robber from a photo

lineup. Resp't Ex. 103 at 65, 80-81. At trial, discussing her meeting with a sketch artist "days" after the incident, Sapp acknowledged that she "only got to see him for a second" and "didn't really pay much attention [to] little details." *Id.* at 63-64. Petitioner's ex-wife Childers did not identify Petitioner in the bank surveillance footage, but testified that Petitioner was a smoker and owned a blue coat similar to the robber's coat. *Id.* at 69, 71-72. In addition, teller Connie Johnson, who had the best view of the robber, provided a general description of the robber at trial, testified that he smelled of smoke, and identified Petitioner's photo from the photo lineup (albeit with some reservation). *Id.* at 38-40, 42-43, 50.

**B.      Physical Evidence**

Petitioner focuses on the fact that his fingerprints were not found in the credit union, and that the bait money and the robber's clothing were not found in his possession. However, given the fact that Petitioner was not arrested until two months after the robbery, the fact that the bait money and clothing were not found in his possession is of no particular import.

With regard to the DNA evidence, police testified that the evidence was "a booger on the counter [] kind of one of these liquidy . . . runny nose kind of drop smear," Resp't Ex. 103 at 84, and the photo in evidence shows that it was not a "smear" suggesting transference. Pet'r's Br. in Supp., Ex. A. Furthermore, the DNA technician testified that there was no evidence of cross-contamination in the DNA sample. Although no witnesses testified to seeing the robber transfer the fluid to the counter, Petitioner has offered no reasonable, fact-based theory explaining how his DNA could have been transferred to the counter short of his presence in the credit union.

**C.      Conclusion**

The eyewitness testimony and DNA evidence were sufficient for a reasonable juror to conclude beyond a reasonable doubt that Petitioner robbed the credit union. Although the

eyewitnesses were unable to identify Petitioner with certainty, the DNA evidence linked Petitioner to the credit union, and the prosecution presented convincing circumstantial evidence linking Petitioner to the crime. The circumstantial evidence included testimony that Petitioner was in Ashland on the day of the robbery, that the robber smelled of smoke and Petitioner is a smoker, and the robber wore a blue jacket similar to one owned by Petitioner. Accordingly, based on an independent review of the record, the state courts' rejection of Petitioner's sufficiency of the evidence claim is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## III.    Ineffective Assistance of Counsel

Petitioner also seeks habeas relief on the basis that trial counsel rendered ineffective assistance at trial by failing to "effectively challenge the key evidence presented by the state and to provide an alternative explanation for how [Petitioner's] DNA could have been in the bank." Pet'r's Br. in Supp. at 24.

To succeed on a claim of ineffective assistance of counsel, a petitioner must prove that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). It is unnecessary to address both *Strickland* requirements if the petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."); *Villafuerte v. Stewart*, 111 F.3d 616, 630 (9th Cir. 1997) ("We may address prejudice without first deciding if counsel's performance was deficient").

### A.    Failure to Provide Alternative Theory for Transfer of DNA

Petitioner argues that trial counsel failed to cross examine effectively, provide argument, or present expert testimony to provide the jury with an alternative theory as to how Petitioner's DNA was found in the credit union. Pet'r's Br. in Supp. at 20, 24, 27-28; Pet'r's Reply at 3.

Respondent asks the Court to deny habeas relief on the basis that Petitioner procedurally defaulted this claim *on appeal* from the denial of post-conviction relief, and has failed to demonstrate cause and prejudice to excuse the default. In the alternative, Respondent argues that the claim lacks merit. Resp't Reply at 2. Petitioner responds that the procedural default of this claim occurred at the PCR *trial level*, and the default is excused under the reasoning in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

### 1.    Does the *Martinez* Exception Apply?

Ordinarily, "an ignorant or inadvertent procedural default" of a claim in a post-conviction proceeding cannot form the basis of a claim of ineffective assistance of counsel because there is no constitutional right to counsel in such proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), *holding modified by Martinez*, 132 S. Ct. 1309. However, in *Martinez,* the Supreme Court recognized a limited exception, holding that "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez,* 132 S. Ct. at 1351. To satisfy *Martinez,* a habeas petitioner must show that: (1) the underlying ineffective assistance of trial counsel claim is substantial; (2) the petitioner had ineffective counsel during the state collateral proceeding; (3) the state collateral proceeding was the initial review proceeding for the claim; and (4) state law

required the petitioner to bring the claim in the initial review proceeding.[1] *Trevino v. Thaler,* 133 S. Ct. 1911, 1919 (2013).

Here, it is undisputed that Petitioner procedurally defaulted his IAC claim during the state post-conviction relief (PCR) proceeding. The parties disagree, however, as to when the procedural default occurred, i.e., at the trial level or on appeal. The resolution of this issue determines whether Petitioner's procedural default may be excused, because *Martinez* does not excuse a procedural default on post-conviction appeal. 132 S. Ct. at 1320 ("The holding in this case does not concern attorney errors in . . . appeals from initial-review collateral proceedings[.]"); *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1295 (9th Cir. 2013) (affirming that *Martinez* applies only to IAC claims "procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding").

Petitioner argues that the IAC claim raised here was defaulted at the PCR trial level. He concedes that a similar claim was raised at the PCR trial proceeding (that counsel should have investigated or hired a DNA expert), but argues that the defaulted claim presented here differs in that he now alleges that trial counsel "failed to develop evidence at trial . . . despite that counsel had an available scientific theory to call into question the State's DNA evidence." Pet'r's Reply at 3. Respondent counters that Petitioner's IAC claim "clearly correlate[s]" to the claim raised at the PCR trial relating to the failure to call a defense DNA expert, and therefore was not defaulted until the PCR appeal. Resp't Sur-Reply at 2.

Based on a review of the state court record and Petitioner's Amended Habeas Petition, this Court concludes that, to the extent that Petitioner's IAC claim is premised on trial counsel's

---

[1] Factors (3) and (4) are satisfied here—a post-conviction trial is the first available forum for review of ineffective assistance of trial counsel claims in Oregon, *State v. McKarge*, 78 Or. App. 667, 668 (1986), and all claims must be raised "in the original or [] amended petition for such relief" or are presumed waived. *Knox v. Nooth*, 244 Or. App. 57, 65 (2011).

failure to obtain a DNA expert, the claim was raised at the PCR trial and subsequently defaulted on appeal. Resp't Ex. 111 at 11. Hence, Petitioner cannot rely on *Martinez* to excuse the procedural default on this claim. 132 S. Ct. at 1320.

However, to the extent that Petitioner's IAC claim is limited to trial counsel's alleged failure to develop the theory of secondary transfer of DNA *through cross-examination or argument*, the claim arguably was not raised in the PCR trial proceeding, thus the Court will give Petitioner the opportunity to satisfy *Martinez*.

**2.    Does *Martinez* Excuse Petitioner's Procedural Default?**

Petitioner advances several arguments to support his assertion that his IAC claim is "substantial" under *Martinez*. First, Petitioner argues that trial counsel was deficient for failing to provide the jury with an alternative theory as to the presence of Petitioner's DNA in the credit union after the robbery, Br. in Supp. at 1, and failing "to effectively counter the key evidence presented by the State." *Id.* at 24. Petitioner faults trial counsel for attacking the chain of custody of the DNA evidence and arguing that Petitioner was not in Ashland, rather than advancing an alternative theory about how Petitioner's DNA could be found in the bank, either through cross-examination or argument. *Id.* at 20.

Further, Petitioner faults trial counsel for failing to use available literature or consultation with an expert to "develop the concept of secondary transfer of DNA in a way that the jury could meaningfully understand." *Id.* at 26. Petitioner posits that "[h]ad this theory been developed, counsel could have introduced the possibility that [Petitioner] had sneezed or coughed on someone who then entered the bank at the time of the robbery and transferred his DNA, through his nasal mucus or sputum, to the interior of the bank." *Id.* at 28. Petitioner acknowledges that

counsel made an "ineffective" attempt to offer a transfer theory at trial, but argues that counsel should have used available resources to develop a "plausible alternative explanation." *Id.* at 30.

To determine whether this default is excusable under *Martinez*, the Court first asks whether the claim is "substantial," which means that there is "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016) (citing *Strickland*, 466 U.S. at 694). Petitioner must show that the deficient performance of trial counsel resulted in actual prejudice to the defendant's case at trial. *Id.*; *see Runningeagle*, 825 F.3d at 982 n.13 (observing that the *Strickland* prejudice requirement for a post-conviction claim is met by proving the substantiality of the underlying trial claim) (citation omitted).

Here, the underlying IAC claim is not substantial. In an affidavit prepared for the PCR proceeding, trial counsel explained that there was nothing in evidence that "would suggest transference." Resp. Ex. 125 at 4. The record supports a conclusion that trial counsel's decision not to develop the transference theory any further was a considered, strategic decision. *See Zapien v. Martel*, 805 F.3d 862, 872 (9th Cir. 2015) (strategic decisions, based on a thorough investigation of the law and facts, are virtually unchallengeable) (citing *Strickland,* 466 U.S. at 690).

Petitioner asserts that there "was no downside to cross-examining the State's witnesses . . . about an alternative theory." Petr's Reply at 3. That may or may not be so, but a defense attorney is not deficient for failing to pursue every potential alternative theory. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (observing that there is "no Supreme Court precedent establishing a 'nothing to lose' standard for ineffective-assistance-of-counsel claims").

At trial, counsel discussed transfer while cross-examining the State's DNA expert, asking if it is possible to "transfer biological material and still get a valid DNA sample out of it." Resp't Ex. 103 at 99. Counsel then reiterated in closing argument that the "[witness] testified that in fact DNA can transfer." *Id.* at 118. In light of the fact that there was no smudging or smearing visible in the photographic evidence, Pet'r's Br. in Supp., Ex. A, trial counsel's decision not to pursue a more robust transfer theory was not professionally unreasonable. *Strickland*, 466 U.S. 699.

Petitioner has not articulated any other transfer theory that would have had a "reasonable probability" of affecting the outcome of the trial. Accordingly, Petitioner has failed to demonstrate that his defaulted IAC claim is substantial as required by *Martinez*. The district judge should deny habeas relief on the ground that the claim is procedurally defaulted, and Petitioner has failed to demonstrate any basis to excuse the default.

### B.    Failure to Cross-Examine Childress about the Coat Effectively

#### 1.    Was the Claim Fairly Alleged?

In Ground One, subpart E of the Amended Petition, Petitioner alleges that trial counsel failed "to effectively cross-examine the State's witnesses[.]" Pet'r's Am. Pet. at 3. In his Brief in Support, Petitioner describes the claim as a failure "to effectively challenge the evidence presented by the State, through cross-examination, or through the presentation of rebuttal evidence." Pet'r's Br. in Supp. at 19. Specifically, Petitioner contends that trial counsel was ineffective for failing to make use of information available in police reports to emphasize potential differences in the coat worn by the robber and Petitioner's coat. *Id.* at 25.

Respondent asks the Court to deny habeas relief because Petitioner did not fairly allege this claim in Ground One of the Amended Petition. Resp't Resp. at 3-4. Respondent argues that the Amended Petition "does not contain a claim that trial counsel failed to use information in the

police reports to elicit testimony from Ms. Childress to undermine the impression that the coat worn by the robber could have been petitioner's coat." Resp't Resp. at 4; *see* Rule 2(c), Rules Governing Section 2254 Cases (requiring Petitioner to specify "all the grounds for relief . . . the facts supporting each ground . . . [and] the relief requested").

The Court finds that Petitioner's allegation that trial counsel failed to cross examine the state's witnesses effectively, contained in Ground One, subpart E of the Amended Petition, is sufficiently broad to encompass Petitioner's current claim. However, because the IAC claim (as currently framed) was not raised during the state PCR proceeding, it is procedurally defaulted.

## 2.    Does *Martinez* Excuse Petitioner's Procedural Default?

Petitioner argues that trial counsel performed no independent pre-trial investigation, and therefore failed to elicit "from Childress how the coat worn by the robber was significantly dissimilar from the coat owned by Seitzinger, namely that one coat had snaps and the other did not." Pet'r's Br. in Supp. at 25, Ex. B at 2 (FBI report); Pet'r's Reply at 3. Respondent counters that "trial counsel's cross examination of [Childress] sufficiently exposed the fact that Childress could not identify petitioner as the robber, and [] there is no evidence that Childress ever affirmatively stated that the coats were dissimilar." Resp't Resp. at 12-13. Respondent reasons that once trial counsel obtained Childress' testimony that she could not identify Petitioner as the robber, there was "no strategic benefit in eliciting further testimony" because the FBI report contained other information tending to implicate Petitioner.[2] *Id.* at 13.

---

[2] The FBI report stated, "CHILDERS advised that the jacket worn by the robber looked to be the jacket worn by SEITZINGER when he arrived in Ashland about three months ago, but CHILDERS did not remember the jacket worn by SEITZINGER to have snaps. CHILDERS commented that SEITZINGER frequently wore beanie caps. [After viewing the surveillance footage, she] said that she believed SEITZINGER to be the robber because of the manner in which the robber stood in the lobby and his general posture." Pet'r's Br. in Supp., Ex. B at 2.

It is not clear from the record why trial counsel decided to terminate cross-examination after Childress testified that she could not identify Petitioner as the robber, but it appears to have been a reasonable decision based upon the additional testimony from Childress that trial counsel might have elicited had he continued the line of questioning. Regardless, in light of the totality of the evidence, including the eyewitness testimony and the DNA evidence, Petitioner has failed to demonstrate that, but for counsel's failure to cross-examine Childress more effectively, there is a reasonable probability that the result of the proceeding would have been different.

Accordingly, Petitioner has failed to demonstrate that his IAC claim is substantial as required by *Martinez*. The district judge should deny relief on the basis that the claim is procedurally defaulted and Petitioner has failed to demonstrate any basis to excuse the default.

## CONCLUSION

Based on the foregoing, the district judge should DENY Petitioner's Amended Habeas Corpus Petition (ECF No. 19). Additionally, the district judge should DENY a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

///

///

///

///

///

///

///

///

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 22nd day of December, 2016.

_____
STACIE F. BECKERMAN
United States Magistrate Judge